# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| Danny's Locksmith, Inc. and Danny Siebenkittel, Individually, and on behalf of all others similarly situated,<br><br>           Plaintiffs,<br><br>   vs.<br><br>KABA ILCO CORP., KABA CORPORATION, KABA FINANCE CORPORATION, KABA BENZING AMERICA, KABA U.S. HOLDING LTD., KABA DELAWARE, LLC, KABA AG, and KABA HOLDING AG<br>                   Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action No.<br><br><br><br><br><br><br><br><br><br><br>**DEMAND FOR JURY TRIAL** |

# CLASS ACTION COMPLAINT

Plaintiffs, Danny's Locksmith, Inc. and Danny Siebenkittel, individually and as representatives of the Class defined herein (the "Class"), bring this action against the defendants identified below ("Defendants"), and aver as follows:

## I.    INTRODUCTION.

1.    This is a class action brought pursuant to Rule 23 of the Federal Rules of Civil Procedure for compensatory damages and restitution and disgorgement of all profits realized by Defendants from the sale of push button door locks that were designed, manufactured, marketed and sold by them.    The push button door locks contain defects in design that make them susceptible to opening by use of various commercially available magnets, rendering the locks ineffective and unfit to perform the safety function for which they were designed. Each of the aforementioned locks manifests the design defect at the present time and must be replaced.

2.      Plaintiffs also seek remedies for Defendants' failure to adequately notify purchasers of the defects.   Finally, Plaintiffs seek to enjoin Defendants from continuing to engage in the marketing and sale of the defective locks.

## II.      PARTIES.

**Plaintiffs**

3.      Plaintiff, Danny's Locksmith, Inc., is a Louisiana Corporation with its principal place of business in the Parish of St. John the Baptist, State of Louisiana. Danny's Locksmith, Inc. provides locksmith services and has purchased the defective locks from the Defendants for installation in properties owned, leased or used by its clients.

4.      Plaintiff, Danny Siebenkittel, is a person of the age of majority who resides in the State of Louisiana within this District.   Danny Siebenkittel is a locksmith who has purchased the defective locks form the Defendants  for installation in properties owned, leased or used by his clients.

**Defendants**

5.      Kaba Ilco Corp. ("KABA") is a corporation organized under the laws of the state of North Carolina, with offices at 400 Jeffreys Road, Rocky Mount, North Carolina 27804.

6.      KABA is a wholly owned subsidiary of Kaba Corporation.

7.      Kaba Corporation, a corporation existing under the laws of the state of Connecticut with its principal place of business located at 400 Jeffreys Road, Rocky Mount, North Carolina 27804, is a wholly owned subsidiary of Kaba Finance Corporation.

8.      Kaba Finance Corporation, a corporation existing under the laws of the state of Delaware with its principal place of business located at 1201 North Market Street, Wilmington, Delaware 19801 is a wholly owned subsidiary of Kaba Benzing America.

9.      Kaba Benzing America a corporation existing under the laws of the state of Florida with its principal place of business located at 3015 North Commerce Parkway, Miramar, Florida 33025 is a wholly owned subsidiary of Kaba U.S. Holding Ltd.

10.     Kaba U.S. Holding Ltd., a foreign corporation existing under the laws of the United Kingdom, is jointly held by Kaba Delaware, LLC and Kaba AG.

11.     Kaba Delaware, LLC, a limited liability corporation existing under the laws of the state of Delaware with its principal place of business located at 1201 North Market Street, Wilmington, Delaware 19801 is a wholly owned subsidiary of Kaba AG.

12.     Kaba AG, a corporation existing under the laws of Switzerland with its principal place of business located at Muhlebuhlstrasse 23, Kempten, 8623 Wetzikon, Switzerland, is a wholly owned subsidiary of Kaba Holding AG.

13.     Kaba Holding AG is a publicly owned corporation existing under the laws Switzerland with its principal place of business located at Hofwisenstrasse 24, CH-8153, Ruemlang, Switzerland.

14.     The corporate structure referenced above will hereinafter be referred to as the "Kaba Group".

15.     The Kaba Group describes itself as the world's number-one producer of key blanks, key-cutting machines, transponder keys, and high-security locks. The Kaba Group is also one of the world's leading providers of electronic access systems, locking systems, hotel locks, security doors, and time recording systems.

16.     The Kaba Group and KABA d/b/a Kaba Access Control manufactures sells and markets the Simplex and Unican lines of locks.

17.   KABA access systems consist of mechanical, electronic and mechatronic high security cylinders and locks ranging from those for use in "the private home" to those intended to service sophisticated high security installations such as banks or classified government sectors.

18.   KABA's traditional sales channels for locks and cylinders include locksmiths, hardware and security shops, which are generating growing sales with electronic access control components and solutions.

19.   KABA is the market leader in the domain of mechanical and electronic pushbutton locks that are very popular in North America and United Kingdom. Instead of inserting a key, users enter a numeric code to open these locks. Because they do not require keys, pushbutton locks are particularly suitable for convenient access control solutions.

20.   KABA is the leader in the Electronic Pushbutton Lock and Mechanical Pushbutton Lock (collectively "PBL") segments of the access control market. Over a period of forty years, PBLs have evolved to become the industry standard for "keyless entry" in standalone locks and are available in three categories; Primary, Auxiliary and Specialty.

21.   Primary PBLs are heavy-duty commercial grade and are often found in institutional heavy-use environments such as universities, airports, hospitals, and government buildings.

22.   Auxiliary PBLs are used in conjunction with a primary lock and are typically found in light commercial or industrial low-use, less demanding applications and private residences.

23.   Specialty PBLs are most common in original equipment manufacturer ("OEM") lock applications such as cabinets or toolboxes, gun safes and medical carts.

24.     All PBLs offer keyless entry, reliable exterior use performance and easy convenient changing of combinations without disassembly or removal from the door.

25.     According to representations made by KABA and the Kaba Group, in 2001,through the acquisition of Unican Security Systems Ltd., Toronto, KABA became:

a.  The number one manufacturer and seller of key blanks, key encoding machines and transponder keys (Ilco and Silca);

b.  The number one manufacturer and seller of high-security vault and container locks (Ilco, Kaba Mas, KabaMauer and Paxos);

c.  The number one manufacturer and seller of electronic access solutions in Europe;

d.  The number one manufacturer and seller of locking systems;

e.  The number one manufacturer and seller of security and automatic doors;

f.  The number one manufacturer and seller of hotel lock systems;

g.  The number one manufacturer and seller of Total Access Systems.

26.     KABA was and is aware that in North America, the industry is strongly influenced by the potential for legal action on the grounds of liability, and escape facilities are vitally important for building owners. Further, KABA is, and was, aware that required standards for locks and security products have gradually been raised and the spending per capita on lock and security products in these markets is the highest in the world.

### III.     JURISDICTION AND VENUE.

27.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 class members nationwide; and the aggregate amount in controversy exceeds $5,000,000 and minimal diversity exists.

28.     Venue is proper in this District under 28 U.S.C. § 1391(a) because plaintiffs reside within it and Defendants have caused harm to class members residing in this District.

### IV.     FACTUAL ALLEGATIONS.

29.     Defendants are involved in the business of designing, manufacturing, marketing and selling mechanical and electronic pushbutton locks. The locks are installed on doors and require the user to input the appropriate combination in order to open the lock.

30.     Defendant, Kaba Ilco Corp., with offices at 2941 Indiana Avenue Winston Salem, NC 27105 has a history that dates back to 1862 when Franz Bauer established his locksmithing and safe building company, Kassa Bauer (translated Bauer Safe).The Kaba name is a contraction of Kassa Bauer.

31.     In 1961, the company Simplex was founded and began producing push button locks.

32.     Simplex was subsequently purchased by the Canadian-based company Unican Security Systems, Ltd. (ôUnicanö).

33.     Unican Security Systems, Ltd. operated under the name Simplex-Unican.

34.     Thereafter, the Independent Lock Company, ILCO, was purchased by Unican and for a period of time the locks were known as Ilco-Simplex.

35.     In 1978, KABA entered the U.S. market by establishing Kaba High Security Locks Corporation in Southington, Connecticut.

36.     In 2001, KABA acquired Unican Security Systems Ltd., which included Ilco keys and Simplex mechanical pushbutton locks, as well as various electronic access control products. Unican pioneered the pushbutton lock, introducing the first mechanical pushbutton lock in 1964.

37.     In or about July of 2005, Kaba High Security Locks Corporation was formally dissolved.

38.     Kaba High Security Corporation now operates under the name Kaba Corporation, a Connecticut corporation.

39.     Defendants represent that with over 145 years of experience, the Kaba Group is one of the oldest and largest suppliers of access control products in the world. The Kaba Group has approximately 10,000 employees with operations in over 60 countries.

40.     Kaba Access Controls is based in Winston-Salem, North Carolina, and offers a diversified product line of access control solutions. With Peaks patented key control systems, Simplex mechanical pushbutton locks and E-Plex electronic access control products, Kaba Access Control offers a solution for every door and every budget.

41.     Kaba Ilco represents that it a leading provider of Mechanical and Electronic Access Control solutions with an extensive line of electronic Hotel Locks, Keyless Locks, Key Blanks, Key Cutting Machines, Specialty Locks and Cylinders.

42.     At all times relevant KABA markets the Simplex line of locks as a security device.

43.     Defendants represent that the Simplex line of mechanical pushbutton locks and the E-Plex line of electronic pushbutton locks offer a convenient way to control access between public and private areas.

44.     Defendants represent that ōKabaœs complete line of Simplex® light commercial and *residential locks provide the same added security features you find in our complete line of heavy-duty locks*ö.

45.     Defendants extol such features as ōno keys or cards to manage, no computers to program, no batteries to replace, and combinations can be changed in seconds without removing the lock from the door.ö

46.     Defendants advertise and market to the consuming public that the Simplex line of locks has õa long history with 40 years in the marketplace, Simplex mechanical pushbutton locks continue to be the durable, reliable choice for many facility managers today.ö

47.     Defendants further represent that the õlocks are *dependable*, easy to maintain, and flexible to meet the needs of todayøs fast-paced environment.ö

48.     The features Defendants highlight are that these õlocks are equipped with PIN access; mechanical push button lock; *single access code* and are ANSI/BHMA Grade 1 Certified.

49.     Defendants further represent that the Simplex line of locks meet Certification and Standards:

   a.   Americans with Disabilities Act (ADA)

   b.   ANSI/BHMA 156.2, Grade 1 Certification; weather resistant, wear tested for extensive use in indoor and outdoor application

   c.   3-hour UL/ULC fire rating for "A" label doors

50.     Defendants further represent that to maintain secure entranceways õthat the Simplex locks are compatible with various exit devices including:

   a.   Arrow S1250

   b.   Arrow S3800

   c.   Corbin Russwin 5200/5200A

   d.   Detex 10/F10

   e.   Dorma 9300/9300F

   f.   Monarch 18R/F-18R

   g.   Precision 21/FL 21

   h.   Sargent 2828

  i. Sargent 3828

  j. Sargent 8800

  k. Sargent 8888

  l. Von Duprin 22/22F

  m. Von Duprin 98/98F

  n. Von Duprin 99/99F

  o. Yale 7100

51. Defendants further represent that the Simplex Locks:

  a. provide ö*Security*ö  without the headache of key management.ö

  b. Mechanical pushbutton locks are a great solution for controlling access between public and private areas.

  c. The locks are ideal for locations with regular personnel turnover, like data processing centers, employee entrances, research labs, *apartment complexes*, and dormitories.

  d. They perform nicely in conjunction with other security access systems*, or as stand-alone security alternatives in smaller building applications.*

52. Defendants market the latest addition to the Simplex line of mechanical pushbutton locks, the Simplex 5000 as offering öunparalleled strength, convenience, and flexibilityö. This extra heavy-duty lock contains internal drive parts of cast stainless steel and a clutch-free direct-drive design.

53. Further Defendants represent that the ö1000 family offers *a tried and true way to protect your assets. The heavy-duty locks in this family are dependable, reliable, and flexible enough to fit any security need in airports, apartment buildings, college dorms, or*

*manufacturing plants.* Choose from knobs, levers, exit devices, exit PIN code locks, and a variety of other model features in this diverse family of locks. Backed by three-year warranty.ö

54.     Defendants represent and market that their ö7100 and 6200 series *can also be used alone, or with another lock in residential applications*. Optional model features include spring latch and deadbolt. The rugged all-metal construction is weather resistant, *providing added strength and durability*ö.

55.     Defendants represent and market that their öE-Plex 2000 series makes it easy to get the security and convenience of electronic access control, without any hassle or complicationö and represents that it is öBHMA Grade 1 Certified.ö

56.     Included in the locks designed and sold by the Defendants are those produced under the names Unican and Simplex, 1000 Series;3000 Series;6200 Series; 7000 Series;7100 Series; and E-Plex 2000 Series. These locks will be hereinafter referred to individually as the öLockö and collectively as the öLocksö.

57.     Defendants claim that their locks are the preferred product of choice for facilities around the globe including healthcare, government, education, residential and commercial applications.

58.     As a result of a flaw in their design, the Locks can be opened by affixing a magnet to the outside of the Locks, which manipulates the internal mechanism and allows the Locks to be opened with ease and without inputting the necessary combination.

59.     The pushbutton Locks manufactured and sold by Defendants can be opened by use of a magnet small enough to fit in the palm of the hand, thus allowing any petty criminal or other interested person easy access to any area whose access is supposed to be restricted by the Locks.

60.     Plaintiffs have purchased multiple pushbutton Locks within the relevant timeframe under the applicable statute of limitations and have installed them on doors of their clientsø homes and businesses.

61.     In order to remedy the problems created by the Locksø design flaw, Plaintiffs will need to replace the defective Locks with non-defective locks at their sole cost and expense.

## V.     CLASS ALLEGATIONS.

62.     Plaintiffs bring this action against Defendants on behalf of itself and the Class. The Class is defined as follows:

> All persons and entities engaged in the locksmith trade who purchased any of the defective Locks in the United States of America and all its territories and the Commonwealth of Puerto Rico.

63.     Excluded from the Class are Defendants, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; persons and entities who have sustained personal injuries or bodily harm as a result of the defects in the Locks; and the judicial officers and their immediate family members and associated court staff assigned to this case, and all persons within the third degree of relationship to any such persons.

64.     This action has been brought and may properly be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

65.     Plaintiffs do not know the exact size of the Class, but it is estimated that it is comprised of hundreds of thousands of persons and entities. The persons and entities in the Class are so numerous that the joinder of all such claimants is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the

parties and the courts pursuant to Rule 23(a)(1).

66.     This action involves common questions of law and fact  as to all of the devices in this litigation relating to their defects, labeling, warning, failure to recall, knowledge and duty. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the class to recover. Among the questions of law and fact common to the Class are:

      a.     Whether the Locks were defectively designed;

      b.     Whether the Locks are not fit for their intended use;

      c.     Whether the Defendants failed to warn that the safety mechanism of the Locks to be bypassed;

      d.     Whether the Defendants concealed information and the nature of the defects from the Class Members;

      e.     Whether Defendants engaged in the alleged conduct knowingly, recklessly, or negligently;

      f.     The amount of revenues and profits Defendants received and/or the amount of loses suffered by Class Members as a result of such wrongdoing;

      g.     Whether Class Members are entitled to declaratory, injunctive and other equitable relief and, if so, what is the nature of such relief; and

      h.     Whether Class Members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

67.     Plaintiffs claims are typical of the Class because Plaintiffs purchased the defective Locks, which are identical or nearly identical to the Locks purchased by other potential plaintiffs.

Thus, Plaintiffs and Class Members sustained the same injuries and damages arising out of the defective design of the Locks. The damages of each Class Member were caused directly by Defendantsø wrongful conduct and the design of the Locks; and

68.     Plaintiffs will fairly and adequately protect the interests of all Class Members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to them for the defective condition of which they complain.  Plaintiffs also have no interests that are in conflict with or antagonistic to the interests of Class Members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and that of the Class. No conflict of interest exists between Plaintiffs and Class Members because all questions of law and fact regarding liability of Defendants are common to Class Members and predominate over any individual issues that may exist, such that by prevailing on their own claims, Plaintiffs necessarily will establish Defendantsø liability to all Class Members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class Members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class Members.

69.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all class members is impracticable. There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for the Defendants and result in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single

forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions world engender.   Furthermore, as the damages suffered by each individual member of the Class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

## VI.    FIRST CAUSE OF ACTION: NEGLIGENCE.

70.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

71.    Defendants were careless in designing, testing, manufacturing, marketing, distributing and selling the devices with defects.

72.    Defendants had knowledge of said defects, yet up until the time of filing this pleading Defendant have failed in their duty to recall these devices or to alert the public and users of the Locks, or the need to replace them and offer to pay for replacement.

73.    At the time Defendants manufactured, distributed, and/or sold the Locks, it owed a non-delegable duty to persons like the named Plaintiffs and the Class Members to exercise ordinary and reasonable care to properly design the Locks, and the owed a continuing duty to warn about the problem, and to repair and/or recall its defective Locks.

74.    As a proximate result of the aforementioned negligence of Defendants, Plaintiffs and the Members of the Class have suffered damages and losses because Plaintiffs and Class Members have unknowingly installed the defective Locks in the homes and businesses of their clients.  As a result, the business reputation of Plaintiffs and Class Members have been damaged. Plaintiffs and Class Members will have to replace the Locks that have been installed.  Also, had Plaintiffs and Class Members known of the defects, they would not have purchased the defective

Locks and would not have paid the amount they were charged for them.  This requires that the amounts paid be refunded and/or reduced.

## VII.    SECOND CAUSE OF ACTION: STRICT PRODUCT LIABILITY.

75.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

76.     Defendants designed, manufactured, marketed, distributed and sold the subject Locks in a condition which rendered them not fit for their intended use due to their ability to be easily bypassed.

77.     Specifically, there is a design defect in the Locks manufactured, distributed, and/or sold by Defendants to locksmiths, such as Plaintiffs and Class Members, who then resold the Locks to their clients.

78.     The design defect creates an unreasonable risk to users of the Locks and renders the Locks unfit for their intended purpose.

79.     Any utility that the design of the Locks may have, is outweighed by the risk associated with their design.

80.     The aforementioned defects existed when Defendants placed the subject Locks into the stream of commerce and continue to manifest themselves at the present time in each of the Locks.

81.     The damages sustained by Plaintiffs and Class Members were a proximate result of one or more of the defects.

82.     By engaging in the aforesaid conduct, Defendants are strictly liable to Plaintiff and the Class Members.

## VIII.   THIRD CAUSE OF ACTION:  FAILURE TO WARN.

83.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

84.     Defendants knew or should have known that the Locks contained a non-obvious danger in their ability to be compromised as set forth above. However, Defendants failed to inform Plaintiffs and the Members of the Class about to the possibility that the safety features of the Locks could be easily bypassed by the use of readily available magnets.

85.     Had Plaintiffs and Members of the Class been warned about the possibility that the safety features of the Locks could be easily bypassed by the use of readily available magnets, they would not have purchased the Locks.

86.     As a direct and proximate result of the Defendants' failure to warn Plaintiffs and Members of the Class that the safety features of the Locks could be easily bypassed by the use of readily available magnets, Plaintiffs and Members of the Class have suffered damages.

## IX.   FOURTH CAUSE OF ACTION:  BREACH OF WARRANTY

87.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

88.     Each of the Locks manifests the defect, which renders the Locks not of merchantable quality and they do not meet the implied and/or express warranty provided by Defendants.

89.     As a direct and proximate result of Defendants' warranty breach, Plaintiffs and the Class Members have suffered and will continue to suffer damages.

90.     Defendants have breached the applicable warranties, express and implied, and are liable to Plaintiffs and Class Members.

## X. FIFTH CAUSE OF ACTION: VIOLATION OF STATE CONSUMER PROTECTION STATUTES.

91.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

92.     Defendants knew or should have known that the Locks were defective and easily bypassed and failed to disclose that information to the general public while continuing to sell the Locks and continuing to represent that the Locks were safe for their intended use.

93.     Plaintiffs and the Class Members relied upon the representations and omissions of the Defendants in purchasing the Locks and subsequent to their purchase of the Locks.

94.     By concealing this crucial information and subjecting all users of the Locks to security breaches, and by continuing to represent that the Locks were safe and fit for their intended use, Defendants engaged in material, deceptive, consumer-oriented acts, in the conduct of their business that damaged Plaintiffs and Class Members.

95.     Plaintiffs and Class Members were injured by Defendants' deceptive acts because they unknowingly purchased the Locks or installation in their clients' properties, believing that they were safe and fit for their intended purpose when in fact they were not.

96.     Subsequent to their purchase of the Locks, Plaintiffs and Class Members continued to believe that the Locks were safe and fit for their intended purpose based upon the representations and omissions of the Defendants.

97.     Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of applicable consumer protection statutes.

98.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 44-1522, *et seq.*

99.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Rev. Stat. § 44-1522, *et seq.*

100.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code § 4-88-101, *et seq.*

101.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*

102.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices or has made false representations in violation of Colo. Rev. Stat. § 6-1-105, *et seq.*

103.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b, *et seq.*

104.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Code 2511, *et seq.*

105.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of D.C. Code § 28-3901, *et seq.*

106.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, *et seq.*

107.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. Stat. §10-1-392, *et seq.*

108.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480, *et seq.*

109.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code § 48-601, *et seq.*

110.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Illinois law, 815 ILCS § 50511, *et seq.*

111.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code Ann. § 24-5-0.5.1, *et seq.*

112.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code § 714.1 b, *et seq.*

113.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, *et seq.*

114.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.110, *et seq.*

115.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401, *et seq.*

116.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation Mass Gen L. Ch. 93 A, *et seq.*

117.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Com. Law Code § 13-101, *et seq.*

118.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat. § 445.901, *et seq.*

119.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 8.31, *et seq.*

120.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Vernon's Missouri Stat. § 407.010, *et seq.*

121.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code § 30-14-101, *et seq.*

122.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq.*

123.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, *et seq.*

124.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:l, *et seq.*

125.     Defendants have engaged in unfair competition or unfair, unconscionable or deceptive acts or practices in violation of N.J. Rev. Stat. § 56:8-1, *et seq.*

126.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. § 57-12-1, *et seq.*

127.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq.*

128.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code § 51-15-01, *et seq.*

129.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01, *et seq.*

130.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of Okla. Stat. 15 § 751, *et seq.*

131.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 646.605, *et seq.*

132.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1, *et seq.*

133.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws. § 6-13.1-1, *et seq.*

134.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10, *et seq.*

135.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. code Laws § 37-24-1, *et seq.*

136.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code § 47-18-101, *et seq.*

137.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41, *et seq.*

138.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code. § 13-11-1, *et seq.*

139.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 9 Vt. § 2451, *et seq.*

140.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, *et seq.*

141.    Defendants have engaged in unfair competition or unfair, deceptive or fraudulent acts or practices in violation of Wash. Rev. Code. § 19.86.010, *et seq.*

142.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of West Virginia Code § 46A-6-101, *et seq.*

143.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of the applicable consumer protection laws of Puerto Rico.

144.    The unfair and deceptive acts and practices of Defendants have directly, foreseeably, and proximately caused or will cause damages and injury to Plaintiffs and the Members of the Class.

145.    The actions of, and failures to act by Defendants, and the above described course of fraudulent conduct and fraudulent concealment, constitute acts, uses, or employment by Defendants of unconscionable commercial practices, deception, fraud, false pretenses, misrepresentations, and the knowing concealment, suppression or omission of material facts with the intent that others rely upon such concealment, suppression, or omission of material facts in connection with the sale of merchandise of Defendants in violation of the consumer protection statutes listed above

146.    Plaintiffs and Class Members relied upon Defendantsø misrepresentations and omission in purchasing the Locks and by reason of the unlawful acts engaged in by Defendants, Plaintiffs and the Class Members have suffered and continue to suffer damages.

147.    As a direct and proximate result of Defendantsø wrongful conduct, Plaintiffs and the Class Members were damaged, and are entitled to compensatory damages, treble damages, attorneys' fees and costs of suit.

## XI.    SIXTH CAUSE OF ACTION:  COMMON LAW FRAUD.

148.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

149.    Defendants have made misrepresentations and omissions of facts material to Plaintiffs' and Class Members' decisions to purchase the Locks by actively concealing, and causing others to conceal, true information about the nature and implications of the design of the Locks and the fact that their safety features could be easily bypassed by use of readily available magnets.

150. Defendants knew at the time that it made these misrepresentations and omissions that they were false or that Defendants had failed to disclose facts it was obligated to disclose in order to make its other representations not misleading. Defendants were aware that Plaintiffs and Class Members would rely on these misrepresentations and omissions, and that such representations were material in the Plaintiffsø and Class Membersø decisions to purchase the Locks.

151. Plaintiffs and the Class Members reasonably relied upon Defendantsø misrepresentations and omissions of material fact. Plaintiffs and Class Members had no reason to doubt the veracity or validity of the information Defendants have promoted through its marketing and sales strategies.

152. Defendantsø misrepresentations and omissions of material fact directly and proximately caused damages to Plaintiffs and the Class Members.

153. By virtue of the fraud they perpetrated on Plaintiffs and the Class Members, Defendants are liable to Plaintiffs and the Class Members for all damages Plaintiffs and the Class Members have sustained, plus punitive damages, plus the cost of this suit, including attorney's fees.

## XII. SEVENTH CAUSE OF ACTION: UNJUST ENRICHMENT.

154. At all times relevant hereto, Defendants designed, manufactured, produced, marketed and/or sold the Locks.

155. Plaintiffs and Members of the Class, without knowledge that the Locks could be easily bypassed by the use of readily available magnets, paid Defendants for such Locks.

156. Defendants accepted or retained the payments with full knowledge and awareness that, as a result of Defendantsø unconscionable wrongdoing, Plaintiffs and Members of the Class and were not receiving products of high quality, nature, fitness or value that had been

represented by Defendants and reasonable consumers would have expected.

157.    Retaining the non-gratuitous benefits conferred upon Defendants by Plaintiffs and Members of the Class under these circumstances made Defendants' retention of the unjust and inequitable.

158.    Because Defendants' retention of the payments is unjust and inequitable, Plaintiffs and Members of the Class are entitled to, and hereby seek disgorgement and restitution of Defendants' profits, revenue, and benefits.

### XIII.   EIGHTH CAUSE OF ACTION: DECEIT, FRAUD AND/OR MISREPRESENTATION.

159.     Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

160.    The misrepresentations, nondisclosure and/or concealment of material facts made by Defendants to Plaintiffs and the Members of the Class were known by Defendants to be false and material and were intended by the Defendants to mislead Plaintiffs and the Members of the Class.

161.    Plaintiffs and the Class Members were actually misled and deceived and were induced by Defendants to incur expenses they otherwise would not have incurred.

162.    As a result of the conduct of Defendants, Plaintiffs and the Class Members have been damaged and continue to suffer damages.

### XIV.   NINTH CAUSE OF ACTION: REDHIBITION AND/OR *QUANTI-MINORIS.*

163.    Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

164.    Defendants sold products that have hidden defects, which render them unfit for the purpose for which they were sold.  These defects cannot be discovered by inspection.

165.    Defendants concealed all information relating to the defective nature of the Locks

and continued to represent that the Locks were fit for their intended use.

166. Defendants used terms like õsafetyö, security and convenienceö in describing their products, including the Locks, when in fact such descriptions were false as the Locks could be easily bypassed. The various marketing materials made available to the Plaintiffs and Class Members by Defendants were also misleading and false.

167. Defendants knew or in the exercise of reasonable diligence should have known, that the Locks had those defects and that they provide neither safety nor security, as they can be easily bypassed. Defendants also knew, or in the exercise of reasonable diligence should have known, that any purchaser of Defendantsø products would understand and believe these various representations as accurate and reliable.

168. Plaintiffs and the Class Members justifiably relied on Defendantsø misrepresentations and made purchase and safety decisions based on those representations.

169. As a result of the conduct of Defendants, Plaintiffs and the Class Members have been damaged and continue to suffer damages. Plaintiff and the Class Members are entitled to a refund or a reduction of the purchase price paid for the Locks.

## XV.   PRAYER FOR RELIEF.

170. WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class, pray for relief as follows:

a. For an order certifying the Class and appointing Plaintiffs and their counsel to represent the Class;

b. For an order awarding Plaintiffs and the Class compensatory damages, restitution and/or disgorgement, refund or reduction of the purchase price paid, and other equitable relief as the Court deems proper;

       c.       For an order enjoining Defendants from engaging in the wrongful practices described herein;

       d.       For an order awarding Plaintiffs and the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' and expert-witness fees and other costs as may be deemed applicable; and

       e.       For an order awarding such other and further relief as this Court may deem just and proper.

## XVI.   DEMAND FOR JURY TRIAL.

171.    Plaintiffs, and all others similarly situated, hereby demand a trial by jury.


DATED: April 6, 2011               Respectfully submitted,

                               Camilo K. Salas III (LA Bar #11657)
                               **SALAS & Co., L.C.**
                               650 Poydras Street, Suite 2000
                               New Orleans, LA 70130
                               Telephone:  (504) 799-3080
                               Facsimile: (504) 799-3085
                               E-Mail:  csalas@salaslaw.com

                               *s/s Camilo K. Salas III*

                               Counsel for the Plaintiffs